Robert E. MITCHELL, a/k/a Bobby Lee Mitchell, Appellant,

v.

UNITED STATES, Appellee.

No. 11554.

District of Columbia Court of Appeals.

Argued Jan. 4, 1978.
Decided March 19, 1979.

William R. Herman, Public Defender Service, Washington, D. C., for appellant. Silas J. Wasserstrom, Public Defender Service, Washington, D. C., also entered an appearance for appellant.

James F. Hibey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty. and John A. Terry, Timothy J. Reardon, III, and Joel S. Perwin, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before HARRIS, MACK and FERREN, Associate Judges.

PER CURIAM:

Appellant has appealed from convictions for assault with intent to kill while armed, under D.C.Code 1973, § 22–3202, and for assault with a dangerous weapon, under D.C.Code 1973, § 22–502. Appellant has argued: 1) that his conviction must be reversed because the trial court's instructions to the jury on self-defense were erroneous as a matter of law; and 2) that the trial court's sentencing of him pursuant to the increased penalty provision of D.C.Code 1973, § 22–3202 was incorrect. We disagree as to both appellant's arguments, and so affirm his convictions.

The relevant facts are these: On the evening of March 17, 1976, appellant, in the company of William Ashcraft and Charles Brooks, went to the apartment of Betty Jean Robinson, a woman with whom both appellant and Ashcraft had lived. Prior to their arrival at the apartment, the three men had been drinking. After their arrival

at the apartment, they continued to drink. At the apartment, a quarrel ensued between appellant and Ms. Robinson. Shortly after the start of the quarrel Ms. Robinson asked appellant to leave her apartment. When appellant refused, Ms. Robinson called the police from a neighbor's telephone. When the police arrived at the Robinson apartment, appellant left.

That same night, appellant returned to Ms. Robinson's apartment. Outside the apartment door, he met Ashcraft and Brooks, who had returned from purchasing liquor at a store. An argument then ensued between appellant and Ashcraft. Once they were back inside the apartment, appellant and Ashcraft continued to argue. Finally, Ashcraft left the apartment, followed by appellant. Once the two were outside, a fight between then ensued.

As a result of the fight, Ashcraft suffered a stab wound, inflicted by a knife in his chest. Ashcraft claimed the knife was not his. Other witnesses placed the knife in appellant's hands. Appellant, on the other hand, claimed that it was Ashcraft who approached him with the knife, while appellant was attempting to enter his car. In any event, Ashcraft was stabbed during the course of the struggle between the two men for the knife.

Appellant finally did get into his car, and before leaving the scene of the fight, drove the automobile over Ashcraft. Appellant claimed that he drove over Ashcraft only after having looked through the rear window of his car and having seen no one (Ashcraft was lying on the street from his knife wound). Other witnesses testified that the car drove back and forth over Ashcraft's legs and that appellant briefly alighted to inquire whether Ashcraft was dead.

Appellant was convicted in Superior Court of assaulting Ashcraft with both a knife and an automobile, under D.C.Code 1973, §§ 22–502, and –3202, respectively. He was sentenced concurrently on both counts, and in accordance with the increased penalty provisions of D.C.Code 1973, §.22–3202.

I.

Appellant has argued, first, that the trial court's instructions to the jury, regarding circumstances under which deadly force could be used in self-defense, wrongly restricted the boundaries of his defense and were therefore in error. The trial court's instruction incorporated verbatim language from *Laney v. United States,* 54 App.D.C. 56, 58, 294 F.2d 412, 414 (1923), to the effect that "It is a well-settled rule that, before a person can avail himself of the plea of self-defense against the charge of homicide, he must do everything in his power, consistent with his safety, to avoid the danger and avoid the necessity of taking life." [1] It has been suggested that this language speaks to a retreat-to-the-wall doctrine which has been rejected by this jurisdiction in subsequent decisions. *See* D.C. Bar Association

1. The instruction, in full, was as follows:

The right to use deadly force in self defense is granted only to those free from fault in the difficulty. It is denied to persons who [incite] the attack, encourage the quarrel or do not withdraw or otherwise promote the necessitous occasion for taking life. Before a person can avail himself of a defense of self defense, the person must do everything in his power consistent with his safety to avoid the danger and avoid the necessity of using deadly force. If a person has a reason to believe that he will be attacked in a manner which threatens him with bodily injury, the person must avoid the attack if it is possible to do so. The right of self defense does not rise until a person has done everything in his power to prevent the necessity. In other words, no necessity for use of deadly force can exist so long as there is a safe way open to escape the conflict. A person is not required to retreat when attacked in a place where the person has a right to be unless by doing so a fight can clearly be avoided. A person may stand upon his rights and resist the attack to the extent apparently necessary to avoid death or great bodily injury. A person is not required to retreat if by doing so he would increase the risk of death or serious bodily harm for himself. It's for you, the jury, to determine from all the facts and circumstances whether a reasonable person confronted with what the defendant then knew would have retreated. If he should have retreated to avoid the assault, he cannot claim self defense.

Criminal Jury Instructions 5.16 (3d ed.) *citing Brown v. United States,* 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921); *Gant v. United States,* D.C.Mun.App., 83 A.2d 439, 440 (1951); *Josey v. United States,* 77 U.S. App.D.C. 321, 135 F.2d 809 (1943). For our purposes here, we need not assess the continued validity of this doctrine, for given the facts of this case and appellant's failure to object at trial, the instruction, even if erroneous, did not constitute plain error warranting reversal. *Watts v. United States,* D.C.App., 362 A.2d 706 (1976) (en banc).

 The facts here, as did the facts in *Laney,* show that there was an initial question as to whether appellant was entitled to invoke the claim of self-defense. While the issue of self-defense is always a question of fact for the jury, the question of whether or not self-defense can be invoked under the evidence adduced is a question of law for the court in the first instance. *Laney v. United States, supra,* 54 App.D.C. at 58, 294 F. at 414. It is well-established that "[s]elf-defense may not be claimed by one who deliberately places himself in a position where he has reason to believe his 'presence . . . would provoke trouble.' " *Rowe v. United States,* 125 U.S.App.D.C. 218, 219, 370 F.2d 240, 241 (1966), *quoting Laney v. United States, supra,* 54 App.D.C. at 58, 294 F. at 414. *Accord, Nowlin v. United States,* D.C.App., 382 A.2d 9, 14 n.7 (1978); *United States v. Taylor,* 167 U.S.App.D.C. 62, 510 F.2d 1283 (1975). Here, there is no dispute that appellant followed the victim Ashcraft into the street after their quarrel in the

Robinson apartment. Appellant's going into the street came on the heels of Ashcraft's remark to him in the apartment, "Bobby, you have whipped [me] one time. Now I'm leaving and if you want me again, I'll be outside." We believe the evidence is strong that by his following Ashcraft into the street, appellant placed himself in a position reasonably calculated to provoke trouble. Our belief is in no way diminished by the fact that the position in which appellant placed himself was on a city street to which the public was generally welcome. A person's presence on a public street under similar circumstances has been found trouble-provoking and hence contrary to his claim of self-defense. *Rowe v. United States, supra.* *See United States v. Peterson,* 157 U.S.App.D.C. 219, 228, 483 F.2d 1222, 1231, *cert. denied,* 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973).[2]

The trial court's instruction to the jury on self-defense, therefore, which was not objected to, was not prejudicial to appellant, for even with its emphasis on a duty to retreat it arguably gave him more than he was entitled to receive. Under the facts of this case, if we assumed arguendo that there was an error in instructing, there was no plain error.

## II.

 Appellant has argued, second, that the automobile with which he was found to have assaulted Ashcraft is not a dangerous or deadly weapon within the purview of D.C.Code 1973, § 22–3202(a) and that therefore it should not have triggered application

**2.** Appellant argues that the court should have submitted to the jury, first, the question of who was the aggressor and instructed, second, that the duty to retreat arises only after a finding that the person invoking self-defense was the aggressor. As we have indicated, the trial court, not the jury, makes a threshold determination of the aggression question in deciding whether a defendant is entitled to a self-defense instruction. We assume, without deciding, that a self-defense instruction was properly given. We conclude, however, that we need not formulate the precise instruction ideally to be given, including resolution of the analytical steps to be taken by the jury. Given the facts tending to prove appellant's aggressiveness in the

matter and his failure to object, the trial court's instruction, *see* note 1, *supra,* was close enough to the mark. The first two sentences explained that the right to use deadly force is limited to those "free from fault" (the aggression issue); the next three sentences outline one's general duty to retreat "consistent with his safety"; and the final sentences set forth exceptions to the duty to retreat. This generally tracks the case law of self-defense. The arguments that the instruction does not make clear how the jury should sort out the factors and permits over-emphasis on the retreat doctrine do not have sufficient merit to justify a finding of plain error.

of the increased penalty provisions of that statute against him. We are not persuaded by this contention. D.C.Code 1973, § 22–3202(a) reads as follows:

> Any person who commits a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles)—

The proper approach for determining what is a "dangerous or deadly weapon" is a functional one, well described by the Michigan Supreme Court.

> The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. When the purpose is evidenced by act, and the instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury, then it is when so employed, a dangerous weapon. [*People v. Goolsby,* 284 Mich. 375, 378, 279 N.W. 867, 868–69 (1938)].

Utilizing this approach, the Michigan court in *Goolsby* found an automobile to be a dangerous weapon within the meaning of Mich.Stat.Ann. § 28.277 (1931), an assault statute similar in language to D.C.Code 1973, § 22–3202. We believe that functionally viewed in the context of this case, appellant's automobile was a "dangerous or deadly weapon" under § 22–3202.

The utilization of a functional approach in this case negatives appellant's suggestion that the articles of violence specifically mentioned in § 22–3202 are meant to set up an exclusive category of inherently dangerous or deadly weapons of which an automobile is not properly a part. The legislative history of § 22–3202 indicates that the statute establishes no such category:

> [T]he list of weapons listed as included in the phrase "otherwise dangerous or deadly weapon" is not an exclusive list. For example, a pocket knife, although not listed, would be a "dangerous or deadly weapon" under this section. . . . [H.R.Rep.No.91–907, 91st Cong., 2d Sess. 68, *reprinted in* [1970] D.C.Code Legis. & Ad.Serv. 399, 465.][3]

As judged by its use, appellant's automobile was no less a dangerous or deadly weapon than a pocket knife—or indeed, a blank pistol, which we have recently held to be within the scope of § 22–3202. *Meredith v. United States,* D.C.App., 343 A.2d 317 (1975).

Because his assault of Ashcraft involved the use of a "dangerous or deadly weapon," appellant was correctly sentenced by the trial court under the increased penalty provisions of § 22–3202.

The convictions and sentencing of appellant in the trial court are

> *Affirmed.*

---

**3.** The legislative history of D.C.Code 1973, § 22–3202, as quoted above, shows that when Congress in 1971 changed the phrase preceding the list of dangerous or deadly weapons in the statute from "including but not limited to" to just "including," it intended only to avoid repetitive wording, and not to limit coverage of the statute to the weapons listed.