Michael E. THOMAS, Appellant,

v.

UNITED STATES, Appellee.

No. 90–524.

District of Columbia Court of Appeals.

Argued Nov. 7, 1991.
Decided Jan. 28, 1992.

William T. Morrison, Washington, D.C., appointed by the court, for appellant.

Elizabeth H. Danello, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, and David E. Mills, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FARRELL and KING, Associate Judges, and PRYOR, Senior Judge.

KING, Associate Judge:

After a jury trial, appellant Thomas was convicted of distribution of a controlled substance (DCS) while armed,[1] possession with the intent to distribute a controlled substance (PWID) while armed,[2] possession of a firearm during a dangerous crime,[3] possession of an unregistered firearm,[4] and unlawful possession of ammunition.[5] He contends that the offense of possessing a firearm while committing a dangerous crime is "the same offense" as both PWID while armed and DCS while armed, and

---

1. D.C.Code §§ 33–541(a)(1), 22–3202 (1988 Repl., 1989 Repl. & 1991 Supp.).

2. Id.

3. D.C.Code § 22–3204(b) (1991 Supp.).

4. D.C.Code § 6–2311(a) (1989 Repl.).

5. D.C.Code § 6–2361(3) (1989 Repl.).

therefore his multiple convictions violate the Double Jeopardy Clause of the Fifth Amendment. He also contends that since he was not previously convicted of committing a "dangerous crime," the trial court erred in imposing a five year mandatory-minimum sentence pursuant to § 22–3202(a)(2).[6] We conclude the legislature did not intend for the offenses to merge; therefore, we hold that appellant's multiple convictions do not violate the Double Jeopardy Clause.

## I.

An undercover police officer approached appellant on the street and offered him twenty dollars in exchange for some crack cocaine. Appellant summoned an accomplice, handed him keys to a car parked nearby, and told him to retrieve some cocaine. The accomplice went to the car, opened the trunk of the car, looked around in it, and then closed it, opened the door on the passenger side of the car, looked under the seat, and returned carrying a white paper towel. The accomplice returned the keys to appellant and handed a zip lock bag containing a single white rock, later determined to be cocaine, to the police officer in exchange for a pre-recorded twenty dollar bill. The undercover officer then returned to his vehicle and radioed a lookout to a waiting arrest team.

Upon receiving the undercover officer's broadcast, the arrest team stopped appellant and his accomplice on the street. After the undercover officer who had pur-

chased the cocaine rode by and positively identified them, they were placed under arrest. When stopped, the accomplice dropped the paper towel; it had concealed seven packets of cocaine held together by a safety pin. After being placed under arrest, appellant was searched. The keys to the car and the pre-recorded funds used to purchase the cocaine were recovered from his pockets. After using the keys recovered from appellant to open the trunk of the car, the arresting officers discovered a bag sitting on top of the spare tire. In the bag, the police discovered a loaded, operable pistol and two identification cards, each containing appellant's name and photograph.

## II.

Before analyzing the specific contention raised by appellant, it will be helpful to review the general legal principles that apply. As this court recently observed:

> The Double Jeopardy Clause, insofar as it applies to the problem of multiple punishments imposed following a single trial, limits only the authority of the courts and prosecutors.... Thus, "[t]he question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed."

*Byrd v. United States*, 598 A.2d 386, 388–389 (D.C.1991) (en banc) (citations omitted). Thus, we must ascertain what the legisla-

---

**6.** Appellant's second contention merits only brief consideration. Pursuant to the first clause of § 22–3202(a)(2), a person "convicted more than once of having so committed a crime of violence, or a dangerous crime ... [shall] be sentenced [to a mandatory-minimum of five years imprisonment]." Because appellant had a prior conviction for a crime of violence in violation of § –3202, the trial court, pursuant to § –3202(a)(2), imposed a mandatory-minimum term of five years imprisonment. Appellant contends that application of the recidivist mandatory-minimum provision following a conviction of a "dangerous crime" requires a previous conviction of a "dangerous crime."

The plain language of the statute belies appellant's contention. Section –3202(a) treats "crimes of violence" and "dangerous crimes"

interchangeably. A previous conviction of either category of crimes requires imposition of a mandatory-minimum sentence; the previous conviction need not be of the same category of crimes as the subsequent conviction to trigger the enhancement provision of § –3202(a)(1) or (2).

We note further that the record indicates appellant was previously convicted of an armed offense and then convicted in this case of a dangerous crime "while armed with any pistol or firearm." Therefore, it would appear that he was subject to a mandatory ten year minimum rather than the five year mandatory-minimum imposed. D.C.Code § 22–3202(a)(2) (1989 Repl. & 1991 Supp.) (last clause). This issue was not raised, however, and we do not address it in this opinion.

ture intended by enacting the two provisions.

▮ Unless a contrary legislative intent is readily discernable, the Supreme Court has held that:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In this jurisdiction, the *Blockburger* rule was "codified as an express declaration of legislative intent in D.C. Code § 23–112 (1989)." *Byrd v. United States, supra,* 598 A.2d at 389 (citations omitted). "[T]he *Blockburger* rule is to be applied in the analysis of multiple punishment issues 'in the absence of a clear indication of contrary legislative intent.' " *Id.* at 389, 52 S.Ct. at 186 (citing *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980)). In short, we look to the statutes to discern the legislature's intent. With those principles in mind, we turn to the statutory provisions involved here.

### III.

D.C.Code § 22–3202 (1989 Repl. & 1991 Supp.) ("3202") provides:

> (a) Any person who commits a crime of violence, or a dangerous crime in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machine gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles):
>
> (1) May, if he is convicted for the first time of having so committed a crime of violence, or a dangerous crime in the District of Columbia, be sentenced, in addition to the penalty provided for such a crime, to a period of imprisonment, which may be up to life imprisonment and shall, if convicted of such offenses

while armed with any pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 5 years; and

> (2) Shall, if he is convicted more than once of having so committed a crime of violence, or a dangerous crime in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a minimum period of imprisonment of not less than 5 years and a maximum period of imprisonment which may not be less than 3 times the minimum sentence imposed and which may be up to life imprisonment and shall, if convicted of such second offense while armed with any pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 10 years.
>
> (b) Where the maximum sentence imposed under this section is life imprisonment, the minimum sentence imposed under subsection (a) of this section may not exceed 15 years imprisonment.
>
> (c) Any person sentenced pursuant to paragraph (1) or (2) of subsection (a) above for a conviction of a crime of violence while armed with any pistol or firearm, shall serve a mandatory-minimum term of 5 years, if sentenced pursuant to paragraph (1) of subsection (a) of this section, or 10 years, if sentenced pursuant to paragraph (2) of subsection (a) of this section, and such person shall not be released on parole, granted probation, or granted suspension of sentence, prior to serving such mandatory-minimum sentence.
>
> (d) Except as provided in subsection (c) of this section, any person sentenced under subsection (a)(2) of this section may be released on parole in accordance with Chapter 2 of Title 24, at any time after serving the minimum sentence imposed under that subsection.
>
> (e)(1) Chapter 8 of Title 24 shall not apply with respect to any person sentenced under paragraph (2) of subsection (a) of this section.
>
> (2) The execution or imposition of any term of imprisonment imposed under paragraph (2) of subsection (a) of this

section may not be suspended and probation may not be granted.

(f) Nothing contained in this section shall be construed as reducing any sentence imposed or authorized to be imposed.

(g) No conviction with respect to which a person has been pardoned on the ground of innocence shall be taken into account in applying this section.

D.C.Code § 22–3204(b) (1991 Supp.) ("3204(b)") provides simply that:

No person shall within the District of Columbia possess a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm while committing a crime of violence or dangerous crime as defined in § 22–3201. Upon conviction of a violation of this subsection, the person may be sentenced to a term of imprisonment for a term not to exceed 15 years and shall be sentenced to imprisonment for a mandatory-minimum term of not less than 5 years and shall not be released on parole, or granted probation or suspension of sentence, prior to serving the mandatory-minimum sentence.

In 1989, the Council of the District of Columbia enacted legislation creating 3204(b) and amending 3202.[7] The legislation created 3204(b) as a new substantive offense. The legislation also amended 3202, a penalty enhancement provision which had already been in effect for many years, to add "or dangerous crime" to sub-

sections 3202(a)(1) and (2) after the words "crime of violence."[8]

■ We are satisfied that when the Council created 3204(b) and amended 3202, it did not intend for the offense defined by 3204(b) to merge with an offense subject to the enhanced penalty provision of 3202. There are a number of factors which persuade us of the legislature's intent. First, the concerns addressed by the two provisions are substantially different. That difference becomes apparent when comparing: (1) the scope of the two provisions; and, (2) the penalties authorized by them.[9] Second, the legislature deliberately avoided treating the two provisions as the same offense.[10] Third, merging the two provisions would produce absurd results.[11] We will address each of these factors in more detail.

### A. The provisions address substantially different concerns.

Section 3202 is a complex penalty enhancement provision which serves multiple purposes. The primary purpose of 3202 is to authorize imposition of an additional penalty for committing certain underlying offenses while armed with or having readily available a dangerous weapon.[12] As a sentencing enhancement provision, 3202 does not comprise a criminal offense in and of itself. Rather, its application is dependent upon a conviction of the underlying offense.

---

**7.** The legislation was called the Law Enforcement Emergency Amendment Act of 1989. It was followed by a second emergency act, a temporary act, and a permanent act. *See United States v. Alston*, 580 A.2d 587, 591–592 (D.C. 1990) (explaining history of act).

**8.** " 'Dangerous crime' ... means distribution of or possession with intent to distribute a controlled substance, if the offense is punishable by imprisonment for more than 1 year." D.C.Code § 22–3201 (1991 Supp.).

**9.** *See Wilson v. United States*, 528 A.2d 876, 880 (D.C.1987) (stating that legislature could not have intended for statutory provisions to merge where they served separate interests and authorized different penalties).

**10.** *See Albernaz v. United States*, 450 U.S. 333, 341–342, 101 S.Ct. 1137, 1143–1144, 67 L.Ed.2d 275 (1981) (stating that legislature is presumed

to know *Blockburger* rule when enacting legislation affected by it).

**11.** *See Haney v. United States*, 473 A.2d 393, 394–395 (D.C.1984) (stating that court must construe statutes based on presumption that the legislature acted logically and rationally).

**12.** In both 3202(a)(1) and (2), the legislature used the words "in addition to the penalty provided for the underlying crime." Also, § – 3202(f) mandates that "[n]othing contained in this provision shall be construed as reducing any sentence imposed or authorized to be imposed." D.C.Code § 22–3202(f) (1989 Repl. & 1991 Supp.). Thus, the legislature's intention in enacting 3202 was stated expressly in the provision itself.

Further, 3202 serves two additional purposes by mandating imposition of an additional penalty under two circumstances. First, it requires a mandatory-minimum penalty for those convicted of being "armed with any pistol or firearm." D.C.Code § 22–3202(a)(1), (2) (1989 Repl. & 1991 Supp.) (last clauses).[13] Second, 3202 requires a mandatory-minimum penalty for recidivists. *Id.* at § –3202(a)(2). Thus, 3202 serves the additional purposes of requiring more severe treatment of recidivists and those who wield firearms. *McCall v. United States*, 449 A.2d 1095, 1096 (D.C.1982).

In contrast, 3204(b) establishes a new and separate substantive offense. *See* "LAW ENFORCEMENT AMENDMENT ACT OF 1989," REPORT OF THE COMMITTEE ON THE JUDICIARY, COUNCIL OF THE DISTRICT OF COLUMBIA (December 4, 1983) at 3 (stating that legislation would create new offense for possessing firearm). Its one purpose is to proscribe the possession of firearms or imitation firearms during a crime of violence or a dangerous crime; it is a gun control provision. Unlike 3202, the application of which is dependent upon a conviction for an underlying offense, 3204(b) provides for a separate and independent criminal offense.

### 1. The two provisions differ substantially in scope.

The scope of 3202 is very broad; it is not confined to a prescribed list of inherently dangerous weapons or instruments commonly used as dangerous weapons. Rather, it also encompasses any instrument used as a dangerous weapon. This would include an instrument that was merely perceived to be a dangerous weapon. *Paris v. United States*, 515 A.2d 199, 204 (D.C. 1986). For this reason, 3202 focuses on the nature of the instrument at issue (*i.e.,* whether it was a dangerous weapon), not solely on whether the instrument itself is specifically proscribed.[14]

In contrast, the scope of 3204(b) is narrow. Under 3204(b), the nature of the instrument, whether it is inherently dangerous or rendered so by its use, is irrelevant. The only inquiry required with respect to the instrument is whether it is a specific instrument—a firearm or imitation firearm—the possession of which is proscribed. In short, 3204(b) was not drafted to encompass the variety of instruments that can be utilized as dangerous weapons to further crimes of violence or dangerous crimes. Its focus is on a specific class of weapons the legislature considered uniquely dangerous. Thus, 3204(b) does not address the same concerns underlying the enhancement provision of 3202.

### 2. The penalties authorized by the two provisions differ substantially.

Section 3202 employs a complex sentencing scheme that reflects its multiple purposes. Under 3202, any mandatory-minimum sentence depends upon: (1) whether the perpetrator was "armed with any pistol

---

**13.** Under 3202(a)(1) and (2) "armed with any pistol or firearm" would be in contrast to: "having readily available" a firearm, or "armed with or having readily available" an imitation firearm or some other instrument found under the circumstances to be a dangerous weapon. *Abrams v. United States*, 531 A.2d 964, 970–971 (D.C.1987).

**14.** Ordinarily, whether an instrument qualifies as a dangerous weapon under 3202 depends upon one of two factors. Either the instrument is an inherently dangerous weapon, or it is rendered so by the manner in which it is utilized. *See Strong v. United States*, 581 A.2d 383, 386 (D.C.1991). In the latter situation, an otherwise innocuous instrument can be used to inflict great injury, *Mitchell v. United States*, 399 A.2d 866 (D.C.1979) (automobile), *Arthur v. United States*, 602 A.2d 174 (D.C.1992) (shod foot); or, it can be utilized by a perpetrator in order to make the victim believe that the perpetrator is armed with or has readily available a dangerous weapon, *State v. Harrigan*, 447 A.2d 1194, 1196 (Del.Super.Ct.), *aff'd* 447 A.2d 1191 (Del.1982) (cited in *Paris v. United States, supra*, 515 A.2d at 204) (holding hand in pocket and threatening to shoot).

We note, however, that while use of an instrument may be necessary in some cases to prove it was a dangerous weapon or was perceived to be a dangerous weapon, *use* of a dangerous weapon is not an element of 3202. *See Washington v. United States*, 366 A.2d 457, 461 (D.C.1976).

or firearm"; [15] and, (2) whether the perpetrator has committed any previous armed offenses. Where neither factor is present, 3202 does not mandate a minimum sentence. Where either one, but not both, is present, 3202 requires a mandatory-minimum sentence of five years. D.C.Code §§ 22–3202(a)(1), (2) (1989 Repl. & 1991 Supp.) (last clause, first clause, respectively). Where both are present, 3202 requires a mandatory-minimum sentence of ten years. *Id.* at § –3202(a)(2).

In addition, 3202 authorizes imposition of any additional sentence up to life imprisonment. The legislature declined to specify the maximum length of any additional penalties short of that maximum. Instead, it conferred wide discretion on the sentencing judge to determine an appropriate additional sentence. Thus, the provision authorizing any additional sentence up to life imprisonment permits imposition of a sentence appropriate to a wide range of conduct, including where the perpetrator (1) used a weapon to cause great bodily harm, (2) was armed with or had readily available a weapon capable of causing great bodily harm, or (3) appeared to be capable of causing such harm with a weapon. In contrast, 3204(b) employs a simple sentencing scheme which leaves no discretion with the sentencing judge. Section 3204(b) requires imposition of the same penalty in every case—a mandatory-minimum term of five years and a maximum term of fifteen years. The sentence imposed does not vary depending upon the circumstances of a particular case. Thus, unlike the range of sentences available under 3202, under 3204(b) the sentencing judge must impose the same sentence without regard to whether the perpetrator: had a real firearm; was armed with it as opposed to having it readily available; used or displayed either a firearm or imitation; or, had any prior convictions of any kind. Unlike 3202, 3204(b) leaves the sentencing judge no discretion to tailor the sentence to either the degree of the harm caused by the perpetrator or any other factor.

### B. The legislature declined to treat the two provisions as the same offense.

When the legislature created 3204(b) as a new offense, the legislature also amended 3202 to include "dangerous crime[s]" within its scope.[16] Therefore, the legislature was aware that it had created two separate statutory provisions that in many circumstances could apply simultaneously to the same conduct. *See Albernaz v. United States*, 450 U.S. 333, 341–342, 101 S.Ct. 1137, 1143–1144, 67 L.Ed.2d 275 (1981). The fact that the legislature chose to create 3204(b) as a new and separate offense at the same time it amended 3202 strongly indicates that the legislature did not intend to treat offenses subject to the enhanced penalty provision of 3202 and offenses defined by 3204(b) as the "same offense." Moreover, at no time did the legislature clearly state, nor did it incorporate into either provision any suggestion that the two provisions should merge.[17]

### C. Merging the two provisions would produce absurd results.

The conclusion that the legislature could not have intended for the offenses to merge is further supported by an examination of some of the sentences that would

---

**15.** See note 13.

**16.** See note 8 and accompanying text.

**17.** Our conclusion that the legislature did not intend for offenses to merge may be further supported by the fact that the two statutes, as codified, differ in their treatment of "dangerous crime[s]." Section 3204(b) requires imposition of a five year mandatory-minimum sentence *and* provides further that the person so sentenced "shall not be released on parole, or granted probation or suspension of sentence, prior to serving the mandatory-minimum sentence." Section 3202, as it is currently codified, has no such requirement with respect to the commission of a "dangerous crime." D.C.Code § 22–3202(c) (1989 Repl. & 1991 Supp.). Rather, under 3202(c), only someone sentenced *to* a mandatory-minimum for committing "a crime of violence while armed with any pistol or firearm ... shall not be released on parole, granted probation, or granted suspension of sentence, prior to serving such mandatory-minimum sentence." *Id.*

result if they did.[18] Regardless of whether 3202 or 3204(b) is vacated, the result would be a reduction of the authorized penalties. It is highly doubtful that the legislature intended such a result when it created 3204(b) to punish a new offense with a mandatory-minimum term of five years while at the same time it amended 3202 to expand the reach of its sentencing enhancement provisions.

If 3202 merges into 3204(b), exposure to an additional sentence of up to life imprisonment, which is authorized by 3202, would be lost in favor of the maximum sentence of fifteen years provided by 3204(b). The absurdity of the result becomes clearer for the case where a perpetrator previously convicted under 3202 is then convicted of a dangerous or violent crime "while armed with any pistol or firearm" under 3202 and also of possession of that firearm under 3204(b). In that example, if 3202 merges into 3204(b), in addition to avoiding the exposure to life imprisonment, the perpetrator would also avoid the *ten* year mandatory-minimum requirement of 3202(a)(2) (last clause). Thus, the additional mandatory-minimum sentence of ten years with a maximum up to life provided under 3202 would be avoided; instead the mandatory five to fifteen years of imprisonment provided by 3204(b) would apply.

Merging 3204(b) into 3202 could also produce absurd results. For example, consider a perpetrator with no previous convictions of an armed offense who commits a violent or dangerous crime while having readily available a real pistol. Merging 3204(b) into 3202 results in no mandatory-minimum sentence since the mandatory five year term under 3202 applies only if the perpetrator is in fact *armed* with the firearm. D.C.Code § 22–3202(a)(1) (1989

Repl. & 1991 Supp.) (last clause) (emphasis added). Without merger, however, the mandatory-minimum sentence of five years required under 3204(b) would apply. The same result would occur where an imitation pistol is used. If 3204(b) merged into 3202, the mandatory-minimum of five years required by 3204(b) would again be inapplicable. Under either example, merging 3204(b) into 3202 would result in avoiding the five year mandatory-minimum sentence.

In sum, under certain circumstances the effect of merging the offenses would be a reduction in the sentence authorized to be imposed. We find no indication whatsoever that the legislature intended such a result when it enacted 3204(b) and amended 3202. In light of that and the other strong indications set forth above that offenses which violate both 3202 and 3204(b) cannot be considered the "same offense," we conclude that the legislature did not intend for the convictions to merge.[19]

### IV.

■ Application of the *Blockburger* rule confirms the conclusion that the legislature did not intend for the offenses to merge. Each offense requires proof of a fact which the other does not. Appellant agrees that the *Blockburger* principle applies in this case; however, he contends that its application requires that convictions under 3204(b) and convictions subject to the enhanced penalty of 3202 must merge. He reaches that result by relying on a fact-based analysis which finds support in some of our cases [20] but which was expressly and unanimously repudiated by our recent en banc

---

**18.** We refer to 3202 as an "offense" only for the sake of simplicity in discussing merger. As we have made clear, 3202 does not in and of itself proscribe a separate and independent offense as is the case with 3204(b). Rather, 3202 adds an additional element, *i.e.*, while armed with or having readily available a dangerous weapon, to certain underlying offenses. Moreover, we note that while merging 3202 into 3204(b) would require vacating that additional element, and along with it, the enhanced penalty authorized

or mandated by 3202, the merger would leave intact the original underlying conviction and the 3204(b) conviction.

**19.** *C.f., Freeman v. United States,* 600 A.2d 1070 (D.C.1991).

**20.** *Worthy v. United States,* 509 A.2d 1157 (D.C. 1986); *Arnold v. United States,* 467 A.2d 136 (D.C.1983). Appellant applied the analysis utilized in these cases. However, he did not cite them for that purpose.

decision in *Byrd v. United States, supra,* 598 A.2d at 390.[21]

Appellant argues that in *this* case both 3202 and 3204(b) required proof: (1) that he committed a dangerous crime; 2) that a pistol was included within the proscription of both statutes; and, 3) that his possession of the pistol violated both statutes. Thus, he concludes application of the *Blockburger* test demonstrates that his violations of 3202 and 3204(b) constitute the "same offense" because neither provision requires proof of a fact which the other does not. Therefore, he asserts his convictions merge.

Appellant's analysis depends upon the comparison of the two provisions in the context of the evidence presented at trial. That approach was specifically disavowed by the Supreme Court in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). "The *Blockburger* test has nothing to do with the *evidence* presented at trial. It is concerned solely with the statutory elements of the offenses charged." *Id.* 110 S.Ct. at 2093 n. 12 (emphasis in original) (cited in *Byrd v. United States, supra,* 598 A.2d at 389). In *Byrd* the en banc court concluded that the pure fact-based analysis, like the one employed by appellant, cannot survive in light of *Grady v. Corbin. Byrd v. United States, supra,* 598 A.2d at 390. It reaffirmed that the analysis must be based upon the "statutory elements of the two distinct charges." *Id.* at 390. We conclude that each statutory provision here requires proof of an element not required of the other. Therefore, under *Blockburger,* the convictions do not merge.

Section 3204(b) requires proof that the accused possessed either a firearm or an imitation firearm. 3202 has no such limitation; it includes not only those instruments listed in 3204(b), but also any "other ... dangerous weapon." Since there is no requirement that the "dangerous weapon" be limited to either a firearm or an imitation firearm, 3204(b) requires proof of a fact not required by 3202. *See, e.g., Freeman v. United States, supra* note 19, at 1073; *Jones v. United States,* 516 A.2d 929, 933 n. 5 (D.C.1987).

Similarly, 3202 also requires proof of an element not required of 3204(b). Under 3202, the accused must be "armed with or [have] readily available" a dangerous weapon. Section 3204(b) requires only that the perpetrator "possess" the firearm or imitation firearm. Proof that one had possession of a firearm does not necessarily establish that the firearm was readily available. *See Strong v. United States, supra* note 14, 581 A.2d at 388. It follows that if the weapon was not readily available, a perpetrator was also not "armed with" that weapon. In short, possession is a broader concept than armed with/readily available. Thus, 3202 requires proof of a fact not required of 3204(b); nothing more need be established under the *Blockburger* test.

The Supreme Court, in *United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985), provides support for our conclusion that nothing more is required. In *Woodward,* a man passing through Customs at the Los Angeles International Airport falsely answered "no" to a question on a standard form asking whether he was carrying more than $5,000. When it became clear that he was going to be searched by Customs agents, he volunteered that he had over $20,000. He was convicted of: 1) making a false statement to an agency of the United States;[22] and, 2) willfully failing to report that he was carrying in excess of $5,000.[23] Both convictions were based upon his answer of "no" to the question on the form. The Ninth Circuit held that the two offenses merged. The Supreme Court reversed, holding that the court of appeals misapplied the *Blockburger* test. The Court held that the two convictions did not merge be-

---

21. Two judges dissented on other grounds. The dissenters, however, agreed with the majority's conclusion that the fact-based analysis of *Worthy* and *Arnold* could not survive. *Byrd v. United States, supra,* 598 A.2d at 394 (Belson, J., dissenting).

22. 18 U.S.C. § 1001 (1976).

23. 31 U.S.C. §§ 1058, 1101 (1976).

cause: "proof of a currency reporting violation does *not* necessarily include proof of a false statement offense." *Id.* at 108, 105 S.Ct. at 612. Similarly, proof of possession does not necessarily prove armed with/readily available, and proof of a dangerous weapon does not necessarily prove a firearm or imitation thereof.

We recognize that the dominion and control elements of the two provisions are not as susceptible to differentiation as is the case with the weapons covered by each provision. We need not attempt to delineate the exact boundaries of either provision, nor establish a precise dividing line between the two in order to resolve the issue presented in this case. It is enough that proof of possession does not necessarily prove that one was armed with or had readily available the weapon. *See id.* at 108, 105 S.Ct. at 612. We are satisfied that there are instances where one may have possession of a weapon under 3204(b) in circumstances where it is not "readily available" under 3202. *See Strong v. United States, supra* note 14, 581 A.2d at 388. As a result, we conclude that, with respect to the element relating to dominion and control over the instrument, 3202 requires proof of a fact not required of 3204(b).

Having applied the *Blockburger* test, we find that each provision requires proof of a fact not required of the other. Section 3202 requires proof that the perpetrator exercised a degree of dominion and control not required for a conviction under 3204(b). Section 3204(b) requires proof that the instrument possessed was either a firearm or an imitation firearm; no other instrument is proscribed. In contrast, 3202 proscribes any instrument found to be a dangerous weapon, which can include but is not limited to firearms and imitations. Accordingly, under *Blockburger* the simultaneous violation of both provisions does not consti-

tute a single offense, and the resulting convictions do not merge.[24]

For the forgoing reasons, the judgments on appeal are hereby

*Affirmed.*

---

**24.** Consequently, the trial judge was free to order the sentences imposed to be either consecutive or concurrent to each other. *See* D.C.Code § 23–112 (1989 Repl.).

We note that appellant received a sentence of ten to thirty years with a mandatory-minimum of five years for his conviction of possession of a firearm during a dangerous crime, 3204(b). However, the statute provides for only one sentence—five to fifteen years with a mandatory-minimum of five years. This issue was not raised, however, and we do not address it in this opinion.