# BROWN *v.* UNITED STATES.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 103. Argued November 19, 1920.—Decided May 16, 1921.

1. The right of a man to stand his ground and defend himself when attacked with a deadly weapon, even to the extent of taking his assailant's life, depends upon whether he reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant, and not upon the detached test whether a man of reasonable prudence, so situated, might not think it possible to fly with safety or to disable his assailant rather than kill him. P. 343. *Beard* v. *United States,* 158 U. S. 550.

2. So *held* of a homicide committed on a post-office site by one who was there in discharge of his duty. P. 344.

3. In a prosecution for murder, it appeared that the defendant shot the deceased several times and again when the deceased had fallen and was lying on the ground. *Held,* that evidence of self-defense.

was for the jury, and that, if they disbelieved the defendant's testimony that the last shot was an accident, they might still have acquitted him if, though intentional, it followed close upon the others in the heat of the conflict and while he believed he was fighting for his life. P. 344.
257 Fed. Rep. 46, reversed.

CERTIORARI to review a judgment of the Circuit Court of Appeals affirming a judgment of the District Court upon a conviction of murder in the second degree. The facts are given in the opinion, *post,* 341.

*Mr. James R. Dougherty* and *Mr. E. C. Brandenburg,* with whom *Mr. W. E. Pope, Mr. Gordon Boone* and *Mr. H. S. Bonham* were on the brief, for petitioner:

The court below erred in not holding that the indictment upon its face did not charge any offense either against the laws of the United States, or within the territorial jurisdiction of the United States.

It was error to instruct the jury that petitioner, though in a place where he had a right to be and though the deceased was making a felonious assault upon him, with intent to kill him or do him some serious bodily injury, was obliged to retreat, though without fault on his part, before he could exercise his right of self-defense, and slay the deceased.

The duty to retreat did not exist in cases of justifiable homicide or justifiable self-defense at the common law. Russell on Crimes, 3d Amer. ed., pp. 508–521; 1 Bishop's New Criminal Law, §§ 849, 850, 851; 1 Hale's Pleas of the Crown, 479–481; 4 Blackstone's Comm. 185; 3 Coke's Inst. 55, 56; Foster's Crown Cases, p. 273; 1 East, Pleas of the Crown, p. 271; Hawkins, Pleas of the Crown, 7th ed., vol. 1, p. 172; 2 Wharton, Criminal Law, § 1019; Wharton, Homicide, § 485; *Beard* v. *United States,* 158 U. S. 550; *Allen* v. *United States,* 150 U. S. 551, 562; s. c. 164 U. S. 492–497; *Rowe* v. *United States,* 164 U. S. 546;

*Erwin* v. *State,* 29 Oh. St. 186; *Runyan* v. *State,* 57 Indiana, 80, 83; *United States* v. *Wiltberger,* Fed. Cas. No. 16,738; *United States* v. *Outerbridge,* 5 Sawy. 620; *Carpenter* v. *State,* 62 Arkansas, 286; *State* v. *Cain,* 20 W. Va. 679; *State* v. *Clark,* 51 W. Va. 457; *Pond* v. *People,* 8 Michigan, 150; *State* v. *Gentry,* 125 N. Car. 733.

A man need not retreat from his place of business when feloniously assaulted, but may stand his ground. A servant or employer has the same right as the owner. If petitioner had owned the lot he would not have been obliged to retreat. He was at the place of his business or his master's business. We submit that this gave him the right to stand his ground. *Andrews* v. *State,* 159 Alabama, 14; *Cary* v. *State,* 76 Alabama, 78; *State* v. *Goodager,* 56 Oregon, 198; *Haynes* v. *State,* 17 Georgia, 465; *Suell* v. *Derricott,* 161 Alabama, 259.

The right to defend one's home, even to the point of slaying a forcible intruder, or one who assaulted the owner therein, does not seem to have depended at the common law entirely upon the fact that the slayer was assaulted feloniously, that is, with an intent to kill him. 1 Bishop's New Criminal Law, § 858; 1 Hale's Pleas of the Crown, 458; *Aldrich* v. *Wright,* 53 N. H. 398.

*Mr. Assistant Attorney General Stewart,* with whom *Mr. W. C. Herron* was on the brief, for the United States:

The question first arises whether any charge as to the law of self-defense was necessary and whether, therefore, the charge as given and complained of by the petitioner may not be disregarded on this writ. Act of February 26, 1919, c. 48, 40 Stat. 1181; *Doremus* v. *United States,* 262 Fed. Rep. 849, 853; *Battle* v. *United States,* 209 U. S. 36, 38; *Addington* v. *United States,* 165 U. S. 184, 187.

The common law never recognized two species of homicide in self-defense, one justifiable and the other excusable; one dispensing with avoidance of, or retreat

from, an assault with a deadly weapon, the other requiring it; on the contrary, the common law, in every case where public interests, *e. g.*, aid of justice, were not involved, required the assaulted person to avoid homicide, if he could do so without endangering the life of himself or another. 2 Pollock & Maitland's History of English Law, pp. 476–481; 3 Stephen, History of Criminal Law, pp. 36–41, 47, 49; Beale, Retreat from Murderous Assault, 16 Harv. Law Rev. 567; Bracton (1250), Twiss ed., c. v, bk. 3, ff. 104b, 134, 144b; Britton (1290), c. vi, pp. 34 *et seq.*, 113; Bracton's Note Book Nos. 1084, 1215; *Howel's Case* (1221), Kenny's Cas. on Crim. Law, pp. 139, 141, 142; Y. B. 30–31, Edw. I, 510, 512 (1302); 6 Edw. I, c. 9; Fitzherbert's Abridgement, Title Corone Nos. 261, 284–287, 305; *Compton's Case*, 22 Lib. Ass. 97, pl. 55; 24 Henry VIII, c. 5; *Cooper's Case* (1663), Cro. Car. 544; 3 Coke's Inst., c. 8, p. 55; 1 Hale's Pleas of the Crown, pp. 424, 425, 478 *et seq.*; *Daver's Case* (1623), Godbolt; 288; *Calfield* v. *The Keeper*, Roll's Reps. 189.

Counsel rely largely upon Foster's view—that, in case of justifiable self-defense, the assaulted party may repel force with force and is not obliged to retreat—(Foster's Crown Cases, pp. 255, 267, 273), and upon *Beard* v. *United States*, 158 U. S. 550, 564, which sustains their view. But Foster's statement does not represent the common law. 1 Hawkins, Pleas of the Crown, pp. 104–115; *Pond* v. *People*, 8 Michigan, 150, 177; Bracton, *supra*, f. 120b; *Morse's Case*, 4 Cr. App. Cas. 50; *Aldrich* v. *Wright*, 53 N. H. 398, 404, 405. Though repeated as law many times, it has never had any effect on actual cases in the English courts. See *Rex* v. *Smith*, 8 C. & P. 160; *Rex* v. *Bull*, 9 C. & P. 22; *Rex* v. *Knock*, 14 Cox Cr. Cas. 1; *Rex* v. *Rose*, 15 Cox Cr. Cas. 540; *Rex* v. *Symondson*, 60 J. P. 645. Foster has been often quoted and relied on by the courts of this country but it is not clear that his view had any effect on the federal courts prior

to the *Beard Case* (1895).   See *United States* v. *Wilt-berger* (1819), 3 Wash. 515, 521; *United States* v. *Outer-bridge* (1868), 5 Sawy. 620; *United States* v. *Mingo* (1854), 2 Curt. 1, 5; *United States* v. *King* (1888), 34 Fed. Rep. 302, 307, 308; *United States* v. *Lewis* (1901), 111 Fed. Rep. 630, 635.   In *United States* v. *Travers* (1814), 2 Wheeler Cr. Cas. 490, 497, 498, 507, the law is stated almost in Foster's language, but it is not clear that the point was important in the case or was called to the attention of the judges.   In the *Beard Case*, the defendant was on his own premises, and, in view of the subsequent decisions in *Allen* v. *United States*, 164 U. S. 492, 497, 498, and *Alberty* v. *United States*, 162 U. S. 499, 507, 508, that decision should be limited to the right not to retreat when assaulted in one's own house.   It is not clear whether, in *Addington* v. *United States*, 165 U. S. 184, 187, the court meant to reaffirm the general statement of the right to kill without retreating, made in the *Beard Case*, or not, or to extend it beyond the exact case there presented.

The common law knew nothing of two kinds of homicide in self-defense, mutually destructive.   If Foster's statement were correct it would follow that on an assault with manifest intent to commit a known felony on the person assaulted there would be (a) no duty to retreat generally, but (b) a duty to retreat if this manifest assault was part of a "chance medley."   Such a distinction is clearly impracticable and impossible of application before a jury.

As it recognized only one species of homicide in self-defense, so the common law applied without question to all such homicides the rule that the person assaulted was under duty to avoid killing his assailant by retreating, if that was practically possible under the circumstances as they appeared to him.   Even Foster admits it as to what he calls excusable homicide in self-defense; and when his distinction of two species of such homicides disappears

(as it does in so far as the common law is concerned), the rule, since its existence is admitted, must extend as well to his so-called justifiable homicide in self-defense.

Even assuming that Foster's statement can be taken as in any way representing the common law, it should not be extended to cases (like the present) where the assault from which the right to kill is derived is no more than, but, on the contrary, is exactly equivalent to the assault with manifest intent to commit a felony specified in the alleged rule. The doctrine of Foster, if adopted at all, should be limited to cases where the assault is merely a collateral means to carry out an independent intent to commit a felony, as where A lies in wait for B, to murder him, and on his approach attacks him. If the rule be so limited, it does not apply to the case at bar because there is no evidence of any independent intent on the part of Hermes to murder petitioner, but, on the contrary, the evidence of the latter himself shows that Hermes came to the excavation to haul dirt, and that the assault was induced by petitioner's statement in regard to such hauling.

In order to excuse or to justify the taking of human life, it must appear that the killing was reasonably necessary to protect other interests which for good reasons the law regards as more important, under all the circumstances, than the continued existence of the life in question. The difficulty lies in defining such "other interests." In so far as self-defense is concerned, the normal case of another interest is the life of a person other than the one killed. If the protection of that life makes necessary the homicide in question, there can be no doubt that the law must excuse or justify the killing. But one evident method of avoiding a homicide is to avoid a conflict from which it may arise, and hence to retreat if assaulted, provided such a retreat would, under all the circumstances as they present themselves to the person assaulted, accomplish the end desired by the law, viz., to preserve

human life if it can be done without seriously endangering
other human lives. The rule of the common-law, there-
fore, that the person assaulted is bound to retreat pro-
vided such a retreat would not be dangerous to his per-
sonal safety, is clearly founded on a reasonable, sensible
principle, and goes as far as such reasonable principle
requires, if the only "other interest" had in mind is the
life and personal safety of the one assaulted.

The rule laid down by Foster and approved in the
*Beard Case* must be supported by a respect for some
interest which the law ought to protect other than human
life or personal safety, since the latter are sufficiently
protected by the very terms of the common-law rule. The
only "other interest" which can be had in mind is the
self-respect and honor of the person assaulted. The
question therefore is whether such self-respect and honor
are in the eye of the law sufficient to weigh down the bal-
ance as against human life. We submit that they are not.

MR. JUSTICE HOLMES delivered the opinion of the court.

The petitioner was convicted of murder in the second
degree committed upon one Hermes at a place in Texas
within the exclusive jurisdiction of the United States,
and the judgment was affirmed by the Circuit Court of
Appeals. 257 Fed. Rep. 46. A writ of certiorari was
granted by this Court. 250 U. S. 637. Two questions
are raised. The first is whether the indictment is sufficient,
inasmuch as it does not allege that the place of the homi-
cide was acquired by the United States "for the erection
of a fort, magazine, arsenal, dock-yard, or other needful
building," although it does allege that it was acquired
from the State of Texas by the United States for the ex-
clusive use of the United States for its public purposes and
was under the exclusive jurisdiction of the same. Penal
Code of March 4, 1909, c. 321, § 272, Third. 35 Stat. 1088.

Constitution, Art. I, § 8. In view of our opinion upon
the second point we think it unnecessary to do more than
to refer to the discussion in the Court below upon this.

The other question concerns the instructions at the
trial. There had been trouble between Hermes and the
defendant for a long time. There was evidence that
Hermes had twice assaulted the defendant with a knife
and had made threats communicated to the defendant
that the next time, one of them would go off in a black
box. On the day in question the defendant was at the
place above mentioned superintending excavation work
for a postoffice. In view of Hermes's threats he had taken
a pistol with him and had laid it in his coat upon a dump.
Hermes was driven up by a witness, in a cart to be loaded,
and the defendant said that certain earth was not to be
removed, whereupon Hermes came toward him, the
defendant says, with a knife. The defendant retreated
some twenty or twenty-five feet to where his coat was and
got his pistol. Hermes was striking at him and the de-
fendant fired four shots and killed him. The judge
instructed the jury among other things that "it is neces-
sary to remember, in considering the question of self-
defense, that the party assaulted is always under the obli-
gation to retreat, so long as retreat is open to him, pro-
vided he can do so without subjecting himself to the
danger of death or great bodily harm." The instruction
was reinforced by the further intimation that unless
"retreat would have appeared to a man of reasonable
prudence, in the position of the defendant, as involving
danger of death or serious bodily harm" the defendant
was not entitled to stand his ground. An instruction
to the effect that if the defendant had reasonable grounds
of apprehension that he was in danger of losing his life
or of suffering serious bodily harm from Hermes he was
not bound to retreat was refused. So the question is
brought out with sufficient clearness whether the formula

laid down by the Court and often repeated by the ancient law is adequate to the protection of the defendant's rights.

It is useless to go into the developments of the law from the time when a man who had killed another no matter how innocently had to get his pardon, whether of grace or of course. Concrete cases or illustrations stated in the early law in conditions very different from the present, like the reference to retreat in Coke, Third Inst. 55, and elsewhere, have had a tendency to ossify into specific rules without much regard for reason. Other examples may be found in the law as to trespass *ab initio, Commonwealth* v. *Rubin,* 165 Massachusetts, 453, and as to fresh complaint after rape. *Commonwealth* v. *Cleary,* 172 Massachusetts, 175. Rationally the failure to retreat is a circumstance to be considered with all the others in order to determine whether the defendant went farther than he was justified in doing; not a categorical proof of guilt. The law has grown, and even if historical mistakes have contributed to its growth it has tended in the direction of rules consistent with human nature. Many respectable writers agree that if a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant he may stand his ground and that if he kills him he has not exceeded the bounds of lawful self-defense. That has been the decision of this Court. *Beard* v. *United States,* 158 U. S. 550, 559. Detached reflection cannot be demanded in the presence of an uplifted knife. Therefore in this Court, at least, it is not a condition of immunity that one in that situation should pause to consider whether a reasonable man might not think it possible to fly with safety or to disable his assailant rather than to kill him. *Rowe* v. *United States,* 164 U. S. 546, 558. The law of Texas very strongly adopts these views as is shown by many cases, of which it is enough to cite two. *Cooper* v. *State,* 49 Tex. Crim. Rep. 28, 38. *Baltrip* v. *State,* 30 Tex. Ct. App. 545, 549.

It is true that in the case of Beard he was upon his own land (not in his house), and in that of Rowe he was in the room of a hotel, but those facts, although mentioned by the Court, would not have bettered the defence by the old common law and were not appreciably more favorable than that the defendant here was at a place where he was called to be, in the discharge of his duty. There was evidence that the last shot was fired after Hermes was down. The jury might not believe the defendant's testimony that it was an accidental discharge, but the suggestion of the Government that this Court may disregard the considerable body of evidence that the shooting was in self-defence is based upon a misunderstanding of what was meant by some language in *Battle* v. *United States*, 209 U. S. 36, 38. Moreover if the last shot was intentional and may seem to have been unnecessary when considered in cold blood, the defendant would not necessarily lose his immunity if it followed close upon the others while the heat of the conflict was on, and if the defendant believed that he was fighting for his life.

The Government presents a different case. It denies that Hermes had a knife and even that Brown was acting in self-defence. Notwithstanding the repeated threats of Hermes and intimations that one of the two would die at the next encounter, which seem hardly to be denied, of course it was possible for the jury to find that Brown had not sufficient reason to think that his life was in danger at that time, that he exceeded the limits of reasonable self-defence or even that he was the attacking party. But upon the hypothesis to which the evidence gave much color, that Hermes began the attack, the instruction that we have stated was wrong.

*Judgment reversed.*

MR. JUSTICE PITNEY and MR. JUSTICE CLARKE dissent.