**James E. GILLIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 13247.

District of Columbia Court of Appeals.

Submitted Nov. 30, 1978.

Decided March 20, 1979.

Rehearing Denied May 8, 1979.

Allen M. Lenchek, Upper Marlboro, Md., appointed by this court, for appellant.

Earl J. Silbert, U.S. Atty., Washington, D.C., with whom John A. Terry, Peter E. George, and Paul N. Murphy, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, YEAGLEY, Associate Judge, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

On a well-lighted but deserted downtown Washington street, about 4:30 on a January morning, appellant shot and killed a man named Smith, who was walking to his place of employment. When brought to trial appellant's defense was that of self-defense. He testified that Smith, who was unknown to him, approached him and accused him "of being with his girl friend, his wife" and Smith then reached into his pocket, that he (appellant) then pulled out his pistol and shot Smith. On cross-examination, appellant said he did not recall into which pocket Smith reached but he appeared to pull something shiny from his pocket. Appellant did not know that the shiny object was and could not recall how many shots he fired. Smith died almost instantly from two gunshot wounds and no weapon was found near him or on his body.

A jury found appellant guilty of second-degree murder while armed [1] and carrying a pistol without a license.[2] On this appeal he makes a single claim of error, asserting that the trial court was in error when, after instructing generally on the law of self-defense, it gave an instruction "implying a duty to retreat."

The alleged erroneous instruction was: If the defendant could have safely retreated, but did not do so, his failure to retreat is a circumstance which you may consider, together with all circumstances in determining whether he went farther in repelling the danger, real or apparent, then he was justified in doing under the circumstances. However, if the defendant actually believed and had reasonable

1. D.C.Code 1973, §§ 22–2403, –3202.

2. D.C.Code 1973, § 22–3204.

grounds to believe that he was in imminent danger of death, or serious bodily harm, and that deadly force was necessary to repel such danger he was not required to retreat, or to consider whether he could safely retreat. He was entitled to stand his ground and use such force as was reasonably necessary under the circumstances, to save his life or protect himself from serious bodily harm.[3]

The common law rule was that one had the right to use deadly force in self-defense when threatened with death or serious bodily harm, but the rule required one to retreat, if it could be done safely, before using such force.[4] This rule became known as the "retreat to the wall" rule. Some states follow this rule.[5] Other states, probably the majority, have adopted the rule that one is not required to retreat but may stand his ground and defend himself.[6] This has been called the American rule and in at least two cases the Supreme Court has indicated approval of it.[7]

Appellant argues that the American rule is the law of this jurisdiction; and the government argues otherwise. In support of his position, appellant cites *Marshall v. United States*, 45 App.D.C. 373, 384 (1916), where it was said:

The right of a defendant when in imminent danger to take life does not depend upon whether there was an opportunity to escape. One under such circumstances is not compelled to step aside, or to flee.

The government counters by citing *Laney v. United States*, 54 App.D.C. 56, 58, 294 F. 412, 414 (1923), where it was said:

It is a well settled rule that, before a person can avail himself of the plea of self-defense against the charge of homicide, he must do everything in his power, consistent with his safety, to avoid the danger and avoid the necessity of taking life. If one has reason to believe that he will be attacked, in a manner which threatens him with bodily injury, he must avoid the attack if it is possible to do so, and the right of self-defense does not arise until he has done everything in his power to prevent its necessity. In other words, no necessity for killing an assailant can exist, so long as there is a safe way open to escape the conflict.

In *United States v. Peterson, supra* note 4, Judge Robinson reviewed the authorities, and, after quoting as we have, the language of *Laney v. United States, supra*, concluded that local precedents are "ample indication that the doctrine of retreat persists" in the District of Columbia. Two years later, in *United States v. Taylor*, 167 U.S.App.D.C. 62, 510 F.2d 1283 (1975), Judge Fahy declined to give full approval to *Peterson's* discussion of the duty to retreat, and cited that language in *Marshall v. United States, supra*, which we have quoted.[8]

---

3. This instruction is No. 5:16B of the Criminal Jury Instructions for the District of Columbia (2d ed. 1972), prepared by the Junior Bar Section of the District of Columbia Bar Association, sometimes referred to as the "redbook" or "standard instructions." The third edition (1978) adds a new sentence to this instruction, but we are not here concerned with it.

4. We, of course, are not here dealing with the "castle" doctrine. "It is well settled that one who through no fault of his own is attacked in his home is under no duty to retreat therefrom." *United States v. Peterson*, 157 U.S. App.D.C. 219, 233, 483 F.2d 1222, 1236, *cert. denied*, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973).

5. *See, e. g., Gainer v. State*, 40 Md.App. 382, 391 A.2d 856, 860 (1978), where it was said: "It is the duty of the defendant to retreat or avoid

danger if the means to do so are within his power and consistent with his safety; but if the peril is so imminent that he cannot safely retreat, he has a right to stand his ground and defend himself."

6. *See, e. g., State v. Jackson*, 94 Ariz. 117, 121, 382 P.2d 229, 232 (1963), where it was said that there is no duty to retreat "even if it appears that safety might more easily have been gained by withdrawing from the scene or by flight."

7. *Brown v. United States*, 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921); *Beard v. United States*, 158 U.S. 550, 15 S.Ct. 962, 39 L.Ed. 1086 (1895).

8. It is interesting to note that one of Marshall's attorneys was Charles Fahy, now Judge Fahy.

Both *Peterson* and *Taylor* were decided after enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970, D.C.Code 1973, §§ 11–101 *et seq.*, and that act made this court, to use Judge Robinson's words, "the final expositor of the local law of the District of Columbia."[9] Thus, we are now called upon to give final approval or disapproval of that part of the jury instructions above quoted.

As previously noted, appellant does not complain of the trial court's general instructions on the law of self-defense. He complains only of any reference to an opportunity to retreat. His position is that under the law of this jurisdiction he "had a right to stand his ground" and "his failure to retreat could not be considered by the jury for any purpose." (Appellant's brief page 15.)

From a reading of the cases in this jurisdiction, our conclusion is that there has been an effort, not always successful, to reach a middle ground between the two extremes, i. e., the right to stand and kill, and the duty to retreat to the wall before filling.[10]

This middle ground imposes no duty to retreat, as it recognizes that, when faced with a real or apparent threat of serious bodily harm or death itself, the average person lacks the ability to reason in a restrained manner how best to save himself and whether it is safe to retreat. "Detached reflection cannot be demanded in the presence of an uplifted knife." Holmes, J., in *Brown v. United States*, 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961 (1921). And the same may be said of a pointed gun or even a clinched fist. But this middle ground does permit the jury to consider whether a defendant, if he safely could have avoided further encounter by stepping back or walking away, was actually or apparently in imminent danger of bodily harm. In short, this rule permits the jury to determine if the defendant acted too hastily, was too quick to pull the trigger. A due regard for the value of human life calls for some degree of restraint before inflicting serious or mortal injury upon another.

It is our opinion that the instruction given meets this middle ground and correctly states the law of this jurisdiction. It does not impose a duty to retreat but does allow a failure to retreat, together with all the other circumstances, to be considered by the jury in determining if there was a case of true self-defense.

*Affirmed.*

**9.** *United States v. Peterson, supra*, 157 U.S. App.D.C. at 232, n. 85, 483 F.2d at 1235, n. 85. *See also M.A.P. v. Ryan*, D.C.App., 285 A.2d 310 (1971).

**10.** *See, e. g., Gant v. United States*, D.C.Mun. App., 83 A.2d 439 (1951).