WHIPPLE, C.J.
LThis matter is before us on appeal by plaintiff, Darren Keith Shipp, individually, and in his capacity as representative of the Estate of Darren Scott Shipp, from a judgment of the trial court granting a motion for summary judgment filed by defendant, Wayne Joseph Landry, and dismissing plaintiffs claims. For the reasons that follow, we reverse and remand.
FACTUAL BACKGROUND
On August 22, 2011, Darren Scott Shipp (“Shipp”) was shot and fatally wounded by Wayne Joseph Landry while Shipp was attempting to enter Landry’s home on Blackwater Road in Baker, Louisiana. Shipp and Landry’s daughter, Alicia, had been dating for approximately seven months and, for approximately four of those months, Shipp lived with Alicia and her daughter, A., in Alicia’s apartment.[1]
On August 22, 2011, Alicia and Shipp had an argument, and when Shipp went to sleep', Alicia went to her parent’s home “to get away” from Shipp. A. was at daycare during this time. Alicia arrived at her parents’ home at approximately 3:30 or 4:00 that afternoon and told Landry that her relationship with Shipp wasn’t working, that Shipp had threatened her, and that she needed Landry’s help “to get her out of there.” A while later, Landry and Alicia went to pick up A. from daycare. Alicia was driving her vehicle and, on the way to the daycare facility, the two stopped at a Cracker Barrel to put gas in her car. While Alicia was putting fuel in the vehicle and Landry was inside the gas station, Shipp pulled up in his truck and parked perpendicular in front of Alicia’s vehicle. As Landry exited the gas station and returned to the car, Shipp and Alicia were arguing, and Shipp was “corralling” her, with his back to Landry. Landry told Alicia to get in Rthe car, and Shipp turned and came toward Landry in what Landry claimed was a threatening manner, with his fist clinched. Shipp began threatening and “cussing” at Landry, calling him a “M- F-” and threatened “I’ll break your f- jaw.” Landry, who holds a Louisiana concealed carry permit, drew his pistol. At that point, Shipp returned to his vehicle, which Alicia had gotten into, and he and Alicia left the scene.[2] Landry then returned to Alicia’s vehicle, put the weapon down and attempted to call 911; however, he was unable to operate the cell phone, which his wife had just bought him a couple of days earlier. Landry, who was “a little bit shaken” then attempted to drive off not realizing that the fuel pump was still in the vehicle. After the hose popped off, he went inside the gas station and advised the clerk that he would pay for any damages and left his name and information with the clerk.
When Landry got home, Alicia and Shipp arrived right behind him. Alicia *723 asked Landry to “come here,” and Shipp exited his vehicle, began threatening Landry, and ran at Landry. According to Landry’s deposition testimony, Alicia handed Landry the baby, Landry brought the baby inside, and after Landry put A. down, Shipp “came at him again” with his fists clinched up from his side. Landry then pulled his weapon on Shipp. Shipp came to Landry, but stopped, telling Landry, “shoot me m- f-, that gun ain’t gonna do nothing but piss me off.” Landry stepped inside the patio and told Shipp that he was not welcome at his home any more and that he was calling the sheriffs department to let them know what had happened. Shipp and Alicia then left together.
Landry called 911 and a deputy was dispatched to his home. Landry reported the two incidents to the deputy and asked the deputy to advise Shipp not to return to his home. The deputy advised that he was going to try to speak to |4Alicia at her apartment later that day. However, before the deputy had a chance to do so, Shipp and Alicia returned to Landry’s home. At the time, Landry, his wife, and their twenty-five year old niece were sitting in an enclosed patio on the side of Landry’s home that leads to the inner door of the home, playing with A.
As soon as Shipp and Alicia arrived, Alicia exited the truck and, along with the others who had been sitting in the enclosed patio, immediately went inside the home, while Shipp remained in his truck. Landry asked the ladies to go lock themselves in the computer room, which was formerly a bed room, while he went into his bedroom to call 911. Landry advised the 911 operator that Shipp was on his property, and asked them to dispatch a deputy to his residence. As Landry hung up the phone, he realized that Shipp had entered into the patio through the patio door and was in the enclosed patio, banging on the interior door of the home and yelling for Alicia. According to Landry, he stood in the hallway around the corner, out of Shipp’s line of sight, and was waiting for the police to arrive. Landry testified he heard Shipp’s voice get louder and the door open. Landry stepped out from the hallway and saw Shipp standing in the doorway. Shipp began “cussing” him and rocking back and forth with his fists up in a threatening manner, while acting very agitated. Landry, who drew his pistol when he stepped into plain view of Shipp, testified he told Shipp several times, “Do not come in my home. Do not come in my home. Whatever you do, do not come in my home.” Landry claimed he was seven or eight feet from Shipp at the time, and that he told Shipp to leave and that the police were on the way. However, Shipp responded that he “could do whatever he wanted” and, according to Landry, then began to enter the Landry home. As Shipp stepped on the threshold to enter the home, Landry shot him once with his pistol. Landry waited inside the home, with | Bhis pistol aimed at Shipp, until the police arrived.[3] Shipp died as a result of the gunshot wound.
PROCEDURAL HISTORY
On June 12, 2012, Shipp’s father, Darren Keith Shipp, individually, and in his capacity as representative of the Estate of Darren Scott Shipp (“plaintiff’), filed a petition for damages, including wrongful death and survivor’s damages, physical, emotional, and mental damages, and funeral expenses, against Landry and his home *724 owners’ insurer, State Farm Fire and Casualty Company (“State Farm”). State Farm answered the petition, setting forth several affirmative defenses. Thereafter, Landry filed a motion for summary judgment.
In his motion for summary judgment, Landry contended that he is immune from any civil liability arising from this incident pursuant to LSA-R.S. 9:2800.19, thereby entitling him to summary judgment and a dismissal of plaintiffs claims against him. In support of his motion for summary judgment, Landry attached the petition for damages (Exhibit A); his affidavit and a photograph of compact discs (Exhibit B with Attachments 1 & 2); the affidavit of Alicia Landry (Exhibit C), and photographs of the scene of the shooting (labeled as Attachments 3 & 4).
Plaintiff opposed the motion for summary judgment, contending that genuine issues of material fact remain as to whether Landry acted reasonably in using deadly force. In support, plaintiff attached excerpts of the deposition testimony of Wayne Landry (Exhibit A); excerpts of the deposition testimony of Alicia Landry (Exhibit B); the affidavit of Dr. Alfredo Suarez (Exhibit C) and photographs of the crime scene.
The trial court heard the matter on May 20, 2012.[4] After reviewing the evidence submitted in support of and in opposition to the motion for summary | fjudgment and hearing argument by the parties, the trial court granted Landry’s motion for summary judgment. A judgment conforming to same and dismissing all of plaintiff’s claims against defendant Landry with prejudice was signed by the trial court on July 9, 2013.[5]
Plaintiff filed the instant appeal, contending that the trial court erred in granting Landry’s motion for summary judgment where: (1) genuine issues of material fact exist as to whether Landry’s decision to use deadly force on August 22, 2011 was justified; and (2) the sworn expert opinion of Dr. Alfredo Suarez concerning the physical evidence of the bullet wound on Shipp’s body contradicts Landry’s testimony concerning the distance between Landry and Shipp at the time the shot was fired, thereby presenting a genuine issue of material fact as to whether Landry was justified in using deadly force against Shipp.
DISCUSSION
Summary Judgment
A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B)(2). The burden of proof remains with the mov-ant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to | 7point out to the court that there *725 is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2).
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Baldwin v. Board of Supervisors for University of Louisiana System, 2013-0602 (La.App. 1st Cir.2/7/14), 138 So.3d 650. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Suire v. Lafayette City-Parish Consolidated Government 2004-1459 (La.4/12/05), 907 So.2d 37, 48. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Anglin v. Anglin, 2005-1233 (La.App. 1st Cir.6/9/06), 938 So.2d 766, 769. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. Fernandez v. Hebert, 2006-1558 (La.App. 1st Cir.5/4/07), 961 So.2d 404, 408, writ denied, 2007-1123 (La.9/21/07), 964 So.2d 333.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Honor v. Tangipahoa Parish School Board, 2013-0298 (La.App. 1st Cir.11/1/13), 136 So.3d 31, writ denied,2014-0008 (La.2/28/14), 134 So.2d 1181. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Guardia v. Lakeview Regional Medical Center, 2008-1369 (La.App. 1st Cir.5/8/09), 13 So.3d 625, 628.
Applicable Law
In 2006, LSA-R.S. 9:2800.19 was enacted by Acts 2006, No. 786, § 1 and LSA-R.S. 14:19 and 14:20 were substantially amended and reenacted by Acts 2006, No. 141, § 1. Section 2 of Act No. 786 provided that the provisions of that Act shall take effect and become effective “if and when” Act 141 was enacted into law and became effective. Both were enacted into law and became effective on August 15th, 2006, the general effective date of the 2006 Regular Session. Accordingly, we construe these statutes in pari materia.
Louisiana Revised Statute 9:2800.19 provides immunity from civil action to those who use “reasonable and apparently necessary” or deadly force or violence in preventing a forcible offense against the person or his property in accordance with LSA-R.S. 14:19 or LSA-R.S. 14:20, as follows:
A. A person who uses reasonable and apparently necessary or deadly force or violence for the purpose of preventing a forcible offense against the person or his property in accordance with R.S. 14:19 or 20 is immune from civil action for the use of reasonable and apparently necessary or deadly force or violence.
B. The court shall award reasonable attorney fees, court costs, compensation for loss of income, and all expenses to the defendant in any civil action if the court finds that the defendant is immune from suit in accordance with Subsection A of this Section.
*726 Louisiana Revised Statute 9:2800.19 refers to LSA-R.S. 14:19, pertaining to the use of force or violence in defense where such use does not result in a homicide, and LSA-R.S. 14:20, the justifiable homicide statute, to determine whether a defendant in a civil case used reasonable force in defense of a person or property. Louisiana Revised Statute 14:20(A) sets forth situations in which a homicide may be justifiable, depending on the reasonable belief of the person using force or violence in defense, the danger presented to that person or others, |9and the need for the use of deadly force. Louisiana Revised Statute 14:20(A), in pertinent part, provides as follows:
A.A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
[[Image here]]
(4)(a) When committed by a person lawfully inside a dwelling ... against a person who is attempting to make an unlawful entry into the dwelling ... or who has made an unlawful entry into the dwelling ... and the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry or to compel the intruder to leave the premises.
Louisiana Revised Statute 14:20(B) provides for a presumption as to the existence of a reasonable belief that the use of deadly force was necessary in certain circumstances. The presumption set forth in LSA-R.S. 14:20(B), as well as Sections C and D of LSA-R.S. 14:20, were enacted in 2006 along with the enactment of LSA-R.S. 9:2800.19,[6] and provide as follows:
B. For the purposes of this Section, there shall be a presumption that a person lawfully inside a dwelling ... held a reasonable belief that the use of deadly force was necessary to prevent unlawful entry thereto, or to compel an unlawful intruder to leave the premises ... if both of the following occur:
(1) The person against whom deadly force was used was in the process of unlawfully and forcibly entering or had unlawfully and forcibly entered the dwelling ...
(2) The person who used deadly force knew or had reason to believe that an unlawful and forcible entry was occurring or had occurred.
C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.
|10D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.
With the enactment of Sections C and D, the legislature has curtailed the evidence that may be offered by the State in a criminal proceeding in proving the use of force unreasonable, and specifically has forbidden the consideration of the possibility of retreat vis-a-vis the use of force. This represents a change in the law, which formerly allowed the consideration of the *727 possibility of escape.[7] State v. Ingram, 45,546 (La.App. 2nd Cir.6/22/11), 71 So.3d 437, 445, writ denied, 2011-1630 (La.1/11/12), 77 So.3d 947. Moreover, although Section B states there “shall” be a presumption of reasonableness, the statute does not state that the presumption is irrebuttable.[8] State v. Ingram, 71 So.3d at 444.
The general construction of these overlaid criminal and civil statutes is such that if reasonable and apparently necessary or deadly force or violence is used for the purpose of preventing a forcible offense against a person or his property in accordance with LSA-R.S. 14:20, the immunity provisions of LSA-R.S. 9:2800.19 are triggered, thereby relieving the person who used such deadly |„ force from civil action for his use of such reasonable and apparently necessary or deadly force or violence.
In the instant matter, Landry contends that the elements of the immunity statute, LSA-R.S. 9:2800.19, as incorporated by reference to LSA-R.S. 14:20, are met in this case under either LSA-R.S. 14:20(A)(1) (i.e., Landry reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm, and that he believed that the force he used was apparently necessary to save himself from that danger) or LSA-R.S. 14:20(A)(4)(a) (i.e., Landry was lawfully inside his dwelling, and Shipp was attempting to make an unlawful entry into the dwelling or had already made an unlawful entry into the dwelling, and Landry reasonably believed that the use of deadly force was necessary to prevent the entry or to compel Shipp to leave the premisés).
Landry concedes that while the scenario presented under LSA-R.S. 14:20(A)(1) raises the issue of whether Landry reasonably believed that he was in “imminent danger” of death or “great bodily harm,” under the second scenario set forth in LSA-R.S. 14:20(A)(4)(a) involving Landry being lawfully in his dwelling, no inquiry is needed concerning Landry’s apprehension because of the presumption set forth in Section B. Instead, Landry contends, under Section B, a presumption will apply that Landry, who was lawfully in his home, held a reasonable belief that the use of deadly force was necessary to prevent Shipp’s unlawful entry or to compel Shipp to leave the premises if:
(1) Shipp was in the process of unlawfully and forcibly entering the dwelling, or had already done so; and
(2) Landry knew or had a reason to believe that Shipp was unlawfully and forcibly entering the dwelling, or such that an entry had occurred.
Landry contends that he met his burden of showing on summary judgment that these elements are “easily” met, giving rise to the presumption, thus meeting |12the elements of LSA-R.S. 14:20. Accordingly, he contends, the civil immunity pursuant to *728 LSA-R.S. 9:2800.19 applies herein to defeat plaintiffs claims.
In support of his motion for summary judgment, Landry offered his affidavit and that of his daughter, Alicia Landry, as well as Landry’s deposition testimony. Landry testified that Shipp was banging on the door of his home after Landry had warned Shipp to get off of his property several times. Landry testified that Shipp then opened the door to his home, whereupon Landry again told Shipp to leave and that the police were on the way. Landry stated that he was 5'9" tall and weighed 145 pounds, while Shipp was twenty-three years old, was approximately 6 feet tall, and weighed approximately 190 pounds. Landry stated that he feared Shipp, and believed that if Shipp entered the home, he would act violently toward Landry and his family and that he and his family were in danger. Landry conceded that prior to this day, there were no hostile exchanges and that he and Shipp had been cordial toward each other. However, Landry stated that on the day of the incidents herein, he felt he and his family were in danger where Shipp stood rocking back and forth with his fist clinched, and where, prior to that, Shipp was beating on Landry’s door “like crazy” and yelling. Landry stated that Shipp’s veins were “popping out in his neck,” his eyes were “bulging out,” that he was threatening Landry and “cussing” at him, and that he was “pretty scared.” Landry claimed that Shipp “stepped forward” with his fists clenched and started to come in after Landry warned him several times. However, Landry conceded that while curse words were spoken by Shipp, he saw Shipp was only holding a cell phone and did not see a weapon prior to Landry shooting him. Landry claimed that the difference between this encounter and the two encounters earlier that day was that instead of backing up, Shipp told him that he would do what he wanted and “stepped forward and continued” toward Landry. Landry claimed that he was at the end where he could not back up any more, that Shipp was | ^approximately seven to eight feet from him, and he “was afraid Shipp was going to attack [them], so he stopped him.”
Alicia stated that while in the computer room, none of them knew what was going to happen or what Shipp was going to do. She described Shipp as “wishy washy” that day, going “up and down, up and down,” and that he “went crazy.” Alicia stated that while in the computer room, she heard Shipp yelling for her and her dad telling Shipp to get off of his property.
Plaintiff opposed the motion for summary judgment, contending that summary judgment was improper because genuine issues of fact exist as to whether Landry’s decision to use deadly force on August 22, 2011 was reasonable and justified. Plaintiff contends that even if the presumption applies, the ultimate question that must be resolved by a factfinder is whether the force was reasonable and apparently necessary.[9]
Nonetheless, in opposition to Landry’s motion for summary judgment, plaintiff offered excerpts of the deposition testimony of Wayne Landry, excerpts of the deposition testimony of Alicia Landry; the affidavit of Dr. Alfredo Suarez, and photographs of the crime scene. In particular, plaintiff points to Alicia’s deposition testimony that she asked Shipp to bring her to *729 her parents’ home. Alicia stated, “At first he said he wasn’t going to take me, so I said I would walk, and he didn’t want me to walk so he took me.” Plaintiff argues that this testimony alone raises an issue of the applicability of the immunity statute, where questions of fact remain as to whether Shipp was invited by Alicia to the Landry home prior to the shooting. Plaintiff further contends that even if Shipp was yelling for Alicia while banging on the door and trying to get into the house, it was unreasonable for |14Landry to expect that any harm would come his way or that the use of deadly force was proper.
Plaintiff further contends that the Dr. Suarez’s affidavit creates a genuine issue of material fact, where Landry testified that he only fired the gun. when he was approximately seven to eight feet from Shipp, while Dr. Suarez stated that after examining crime scene photographs provided by the East Baton Rouge Sheriffs Office, the shot was instead actually fired from a distance commonly known as the “contact range.” Dr. Suarez stated that “contact range” means that the barrel of the gun was touching Shipp’s skin when the shot was fired. Plaintiff contends that Dr. Suarez’s opinion likewise creates a genuine issue of material fact precluding summary judgment because it raises the issue of whether Landry was justified or acted reasonably under the circumstances in using deadly force. We agree.[10]
On review, we find that there is a genuine issue of material fact as to whether or not Landry’s use of deadly force was reasonable under all of the circumstances of this ease which precludes the entry of summary judgment in Landry’s favor. Specifically, we find that the following facts raise a genuine issue as to whether Landry could have held a reasonable belief that the use of 115deadly force was necessary, including: (1) the two had a cordial relationship prior to this day; (2) Landry knew that Shipp was unarmed before he shot him; (3) Landry had called police and was aware that they were on the way; (4) in the two earlier encounters that day, merely brandishing the weapon was sufficient to cause Shipp to back away; and (5) there is expert opinion evidence that the barrel of the gun was touching Shipp’s skin when the shot was fired, calling into question the credibility of Landry’s version of the events.
Pretermitting whether plaintiff can ultimately prevail on the merits, we are constrained to find that questions of fact re *730 main, which preclude summary judgment, as these determinations inevitably involve a weighing of evidence and testimony, which is reserved for a determination by the trier of fact. Accordingly, the summary judgment dismissing all claims against Landry, with prejudice, must be reversed. Because we find these unresolved issues preclude summary judgment, we pretermit discussion of plaintiffs remaining assignments of error.
CONCLUSION
■For the above and foregoing reasons, the July 9, 2013 judgment of the trial court is hereby reversed arid this matter is remanded for further proceedings. Costs of this appeal are assessed to the defendant/appellee, Wayne Joseph Landry.
REVERSED AND REMANDED.

. A. was approximately one year old at this time.

. Landry claimed that at the time, he was unaware that Shipp had picked up A. from daycare and that A. was in Shipp’s truck.

. Landry acknowledged that he was subsequently arrested and charged with second degree murder. However, after submission to a grand jury, the jury declined to return an indictment against Landry.

. During the hearing, the trial court allowed counsel for Landry to supplement the exhibits admitted in support of the motion for summary judgment with the entire deposition of Wayne Landry.

. Although the judgment dismissing all of plaintiff's claims against Landry was certified as a final judgment for purposes of appeal, such certification was unnecessary where the judgment was appealable under LSA-C.C.P. art. 1915(A)(3).

. See Acts 2006, No. 786, §§ 1 and 2 and Acts 2006, No. 141, § 1.

. Through the presumption, the law recognizes that forcible entry situations often develop quickly and may present a threat of harm that allows little time for a homeowner to carefully weigh his options in defending, himself. As Justice Holmes famously stated in a related context, "Detached reflection' cannot be demanded in the presence of an uplifted knife." State v. Ingram, 71 So.3d at 444-445 quoting Brown v. United States, 256 U.S. 335, 343, 41 S.Ct 501, 502, 65 L.Ed. 961 (1921).

. In State v. Ingram, 71 So.3d at 444, the court held:
Although the legislature has the power to expand the justifiable homicide defense to conclusively declare the use of deadly force reasonable in every case of unauthorized entry, it has not done so. Instead, the legislature clarified and expanded the "reasonable and necessary” requirement in La. R.S. 14:20(A) with the use of the "presumption” language in La. R.S. 14:20(B).

. In support, however, plaintiff relies on State in the Interest of D.P.B., 2002-1742 (La.5/20/03), 846 So.2d 753, a criminal case rendered prior to the substantial amendments and reenactment of LSA-R.S. 14:20 and the enactment of LSA-R.S. 9:2800.19 in 2006. Thus, we find the case unpersuasive herein.

. We further note that in order for the LSA-R.S. 14:20(B) presumption to apply herein, Landry was required to show that Shipp was in the process of "unlawfully and forcibly entering” and that Landry knew or had reason to believe that an "unlawful and forcible entry” was occurring. LSA-R.S 14:20(B)(1) and (2)(emphasis added). Although "forcible entry" is not defined in LSA-R.S. 14:20, "forcible” is generally defined as “[e]ffected by force or threat of force against opposition or resistance.” Black’s Law Dictionary 657 (7th ed.1999). Landiy testified that the door from the patio to the home interior was closed. He stated that if the door had even been slightly ajar, in his opinion, it would have flown open long before with the severity of Shipp’s beating on the door, while calling for Alicia. Landry testified, however, that he did not know and was unable to say whether the door Shipp entered was locked or unlocked. While he thought that the deadbolt on the door was not locked, he did not know if the doorknob lock was engaged. Landiy stated that he heard a door open and then stepped into the hall with his gun drawn. Thus, based on the evidence presented on summary judgment, while Landiy may have established that Shipp’s entry was unlawful, a question of material fact also remains as to whether Landiy established that Shipp’s entry was "forcible” under the facts developed thus far. Louisiana Revised Statute 14:20(B) requires that the entry be unlawful and forcible to apply the presumption of reasonableness giving rise to civil immunity.