NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-740                                            Appeals Court


COMMONWEALTH  vs.  RAFAEL LEONER-AGUIRRE.[1]


No. 17-P-740.

Suffolk.     October 12, 2018. - December 13, 2018.

Present:  Rubin, Wolohojian, & Blake, JJ.


Assault and Battery.  Assault and Battery by Means of a
     Dangerous Weapon.  Assault with Intent to Kill.  Firearms.
     Practice, Criminal, Presumptions and burden of proof,
     Instructions to jury.  Self-Defense.  Evidence, Self-
     defense.


     Indictments found and returned in the Superior Court
Department on June 30, 2014.

     The case was tried before Kimberly S. Budd, J.


     S. Anders Smith for the defendant.
     Julianne Campbell, Assistant District Attorney, for the
Commonwealth.


     BLAKE, J.  Following a jury trial in the Superior Court,

the defendant, Rafael Leoner-Aguirre, was convicted of numerous

---

[1] As is our custom, we spell the defendant's name as it
appears in the indictments.

crimes stemming from a shooting in Chelsea.[2]  He argued that he shot the victim in self-defense.  On appeal, the defendant claims that the judge erred when she instructed the jury that the defendant had a duty to retreat, and that the judge improperly shifted the burden of production to the defendant on whether a self-defense instruction was warranted by the evidence.  We affirm.

Background.  The jury were presented with the following evidence.  On April 16, 2014, at approximately 2:30 P.M., Javier Servellon and Amilcar Portillo were walking down Broadway Street in Chelsea.  Two men, Josue Morales and the defendant, approached Servellon and Portillo because they believed Servellon and Portillo had stabbed their friend.  A fight broke out, initiated by the defendant and Morales.  Servellon believed that one of the attackers had a weapon and tried to run away.  However, Servellon turned back because he did not want to leave Portillo alone with the attackers.  While trying to help Portillo, Servellon tried to hit the attackers with an object.[3]

---

[2] The defendant was convicted of assault with intent to kill, aggravated assault and battery by means of a dangerous weapon, assault and battery by means of a dangerous weapon, two counts of assault and battery, possession of a firearm without a firearm identification (FID) card, and possession of a loaded firearm without an FID card.

[3] Javier Servellon described the object as a big necklace or a chain.  Portillo testified that the object was a rock, a brick, or a chain.  A bystander described the object as a belt.

During the fight, Portillo saw the defendant display a gun and heard him say, "Today I'm going to kill you." Servellon saw the defendant "brace the gun," and turned around to flee. The defendant fired two shots at Servellon, who was struck in the buttocks. The defendant later admitted to others that he had shot Servellon and showed the gun to them.

In connection with a police investigation of the shooting, the defendant told police that one of "two young men" had displayed a gun, and that the man tripped and dropped the gun during the altercation. The defendant explained that he was mad so he picked up the gun, shot it once, and then hid it in his bag.

At trial, the defendant testified that he shot Servellon but did so in self-defense. He explained that he had problems with Servellon in the past, and that when he saw Portillo and Servellon on the street, he thought Portillo had a weapon. He testified that Portillo dropped a gun and that he, the defendant, "picked it up," "put it away," and then "r[an] to fight Servellon." He testified that Servellon tried to hit him twice with a bike chain, and that on Servellon's second attempt to hit him, he shot the gun at Servellon twice in self-defense.

At the close of the evidence, the defendant filed a motion for "a self-defense jury instruction." Over the objection of

the Commonwealth, the judge so instructed the jury.[4]  The defendant did not object to the instruction as given.

Duty to retreat.  At the close of evidence, the judge, without objection, instructed the jury[5] that the defendant had a duty to retreat if he could do so in safety prior to using deadly force.  On appeal, the defendant claims that "[t]he longstanding Massachusetts' duty to retreat rule, as an undue restriction of a fundamental right [to self-defense]," is unconstitutional.  In support of his claim, the defendant relies on the holdings of McDonald v. Chicago, 561 U.S. 742 (2010), and District of Columbia v. Heller, 554 U.S. 570 (2008), to suggest that the right to defend one's self is a fundamental constitutional right that cannot be limited by the "undue

---

[4] In his motion, the defendant refers to Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (2009).  Nonetheless, this error has no bearing on the defendant's argument, as the judge correctly instructed the jury in accordance with § 5.4.1 of the Massachusetts Superior Court Criminal Practice Jury Instructions (2d ed. 2013).

[5] Consistent with § 5.4.1 of the Massachusetts Superior Court Criminal Practice Jury Instructions, and the holding in Commonwealth v. Mercado, 456 Mass. 198, 208-209 (2010), the judge instructed the jury that "[t]he Commonwealth satisfies its burden of proving that the defendant did not act in proper self-defense if it proves . . . the defendant did not use or attempt to use all proper and reasonable means under the circumstances to avoid physical combat before resorting to the use of deadly force."  She further instructed that "[a] person must retreat unless he cannot do so in safety or unless retreat would increase the danger to his or her own life."

restriction" of a duty to retreat.  He also relies on <u>Brown</u> v. <u>United States</u>, 256 U.S. 335 (1921), for the proposition that an individual does not forfeit his right to use deadly force, even when it is safe to retreat and he fails to do so.

In <u>Heller</u>, 554 U.S. at 635, the United States Supreme Court concluded that a "ban on handgun possession in the home violates the Second Amendment [to the United States Constitution], as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense."  The Second Amendment was subsequently held applicable to the States. See <u>McDonald</u>, 561 U.S. at 791.  The defendant argues that the United States Constitution gives someone possessing a handgun the right to utilize it in self-defense even where he or she could retreat in safety without increasing the danger to his or her own life.  There is no basis in law or history for this view.  Where one can retreat in safety, it is not necessary to utilize deadly force in self-defense.  Defendant's counsel conceded as much at oral argument.

Here, the defendant was in a public place and in possession of an unlicensed handgun.  Even assuming that the defendant had a constitutional right to use his firearm in self-defense if necessary, it did not give him, or anyone, the right to utilize a firearm in self-defense when it is unnecessary, for example,

when one can safely retreat as required by the defense of self-defense under Massachusetts law.

In essence, the defendant is asking us to supplant centuries of common law that requires a defendant to retreat before using deadly force, see Monize v. Begaso, 190 Mass. 87, 88-89 (1906), and to hold that the Constitution imposes a "stand your ground" regime even in States that have not adopted one.[6,7] Indeed, at oral argument, the defendant likened his position to the laws of some States that establish a right to self-defense against threats or perceived threats, even to the point of applying deadly force, the so called "stand your ground" laws. See, e.g., Fla. Stat. Ann. § 776.012, Ala. Code § 13A-3-23(b).

---

[6] "[The Supreme Judicial Court] is the highest appellate authority in the Commonwealth, and [its] decisions on all questions of law are conclusive on all Massachusetts trial courts and the Appeals Court." Commonwealth v. Vasquez, 456 Mass. 350, 356 (2010). See Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485-486 (2003) (Appeals Court has "no power to alter, overrule or decline to follow the holdings of cases" decided by Supreme Judicial Court).

[7] The adoption of the Massachusetts Constitution in 1780 did not displace centuries of common law. See Part II, c. 6, art. 6, of the Massachusetts Constitution ("All the laws which have heretofore been adopted, used and approved in the Province, Colony or State of Massachusetts Bay, and usually practiced on in the courts of law, shall still remain and be in full force, until altered or repealed by the legislature; such parts only excepted as are repugnant to the rights and liberties contained in this constitution").

Barring some constitutional prohibition, States are free to adopt such laws. But Massachusetts has not, and nothing in Heller, McDonald, or the Second Amendment prohibits States from abiding by the long-standing rule that deadly force, including by the use of a firearm, may be used only when actually necessary in self-defense.

Nor does Brown, 256 U.S. at 342-344, in which the Supreme Court found that the judge erred by instructing the jury that the defendant was required to attempt to retreat before he could claim self-defense, provide any support for the defendant's argument. Brown was a common-law case, not purporting to interpret the United States Constitution, and it did not and does not prevent the Commonwealth from adopting the opposite rule. See Commonwealth v. Trippi, 268 Mass. 227, 232 (1929), quoting Commonwealth v. Peterson, 257 Mass. 473, 478 (1926) ("right of self-defence does not accrue to a person 'until he has availed himself of all proper means in his power to decline the combat'").

On the merits of his self-defense claim, the defendant fares no better. "[T]he privilege to use self-defense arises only in circumstances in which the defendant uses all proper means to avoid physical combat." Commonwealth v. Mercado, 456 Mass. 198, 209 (2010), citing Commonwealth v. Benoit, 452 Mass. 212, 226 (2008). Accord Commonwealth v. Berry, 431 Mass. 326,

335 (2000).  Here, no view of the evidence supports the suggestion that the defendant availed himself of any means to retreat before using deadly force on a public street, and a reasonable jury could so find.  The defendant acknowledged that Servellon was shot in the backside while running from the scene. There was no evidence that the defendant was not able to walk away from the fight.  Unlike in Brown, 256 U.S. at 344, there was no evidence here that the defendant feared for his life or that the attack was initiated by the victim.  Out of an abundance of caution, the jury were instructed on the duty to retreat, which was part of the self-defense instruction that the defendant asked for and to which he did not object.  Indeed, the defendant got more than he was entitled to receive.  According-ly, there was no error, let alone a substantial risk of a miscarriage of justice.

Self-defense instruction and burden of proof.  The defendant claims that the judge improperly shifted the burden of proof to him by stating that he must present evidence in order to receive a self-defense instruction, and that this essentially forced him to testify.  There are no facts in the record to support this burden-shifting claim.  Near the end of the Commonwealth's case, the judge cautioned that she was not likely to give a self-defense instruction absent some additional

evidence from the defendant.[8]  The defendant did not seek clarification, nor did he argue that he was entitled to the instruction based on the Commonwealth's case-in-chief.  Rather, he raises the claims of burden shifting and compulsion to testify for the first time on appeal.

"A defendant is entitled to a self-defense instruction if any view of the evidence would support a reasonable doubt as to whether the prerequisites of self-defense were present." Commonwealth v. Pike, 428 Mass. 393, 395 (1998).  The Commonwealth, in its case-in-chief, introduced in evidence a transcription of the police interview of the defendant.  The defendant told the police that he shot the gun out of anger rather than out of fear.  He explained, "I got mad, I got mad, I got mad, then, because I really wanted to grab him, and it was like he tripped and dropped the gun.  I was mad, I grabbed it and shot it."  Although the Commonwealth presented evidence that Servellon used an object during the fight, at the close of the Commonwealth's case there was no evidence that the defendant "reasonably and actually believed that he was in 'imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force.'"  Id. at 396, quoting

---

[8] The prosecutor asked the judge if she would give a self-defense instruction if the defendant "hasn't put any witnesses to show self-defense."  The judge answered, "No, it's not likely if he doesn't put anyone on."

Commonwealth v. Harrington, 379 Mass. 446, 450 (1980). Viewing the evidence in the Commonwealth's case-in-chief in the light most favorable to the defense, the absence of any evidence that the defendant attempted to avoid physical combat rendered a self-defense instruction unwarranted at that stage of the trial. See Commonwealth v. Espada, 450 Mass. 687, 692-694 (2008). There was no error in the judge's statement that she was unlikely to instruct on self-defense without additional evidence from the defendant.

Judgments affirmed.